## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **LESLIE ANNETTE S.,**[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 20-1282-JWL** |
| **KILOLO KIJAKAZI,**[2] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) assessment of Plaintiff's Mental Residual Functional Capacity (MRFC), the court

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

Plaintiff protectively filed applications for DIB and SSI benefits on June 27, 2018. (R. 10, 265, 267).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the Mental RFC assessed is not supported by substantial evidence because significantly probative evidence ignored by the ALJ compels finding that she is disabled.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the

evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

3

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the error alleged in Plaintiff's Social Security Brief.

**II. Discussion**

Plaintiff argues the record evidence compels a finding that she is disabled. She argues Dr. Schwartz's opinion that Plaintiff's "severe anxiety would interfere with her ability to perform even simple work," her worsening symptoms thereafter, and her eventual need to participate in specialized mental health treatment constitutes such compelling evidence. (Pl. Br. 8). She argues the ALJ's decision Plaintiff "retained the

ability to perform jobs which are simple and routine, generally described as unskilled, with no interaction with the general public and only occasional interaction with coworkers and supervisors"—when considered in light of this contrary evidence—is not supported by substantial evidence. (Pl. Br. 8). Plaintiff argues the ALJ's rationale for his RFC is erroneous and concludes, "No reasonable mind would accept the ALJ's mental RFC conclusion as supported by the evidence because the record as a whole compels a different conclusion." Id. at 9. She argues, "the ALJ ignored or simply glossed over evidence" which compels greater RFC limitations and requires remand. Id.

Specifically, Plaintiff argues inpatient psychiatric hospitalization is not required to demonstrate a mental impairment or disability due to mental impairments. Id. at 10. She argues that consistent medication changes, abnormal examination findings, reports of worsening symptoms, and the need for specialized mental health treatment demonstrate that Plaintiff's condition worsened over time. Id. She argues the ALJ's reliance on some mental status examinations revealing overall normal findings to deny greater limitations is erroneous because some of the mental status exams relied upon coincided with treatment records not related to mental health and because even in treatment notes relied upon, her "providers acknowledged her reports of ongoing or worsening symptoms and changed her medications accordingly, but the ALJ failed to address this evidence." Id. at 11. Plaintiff argues that although the ALJ relied on reported stability and certain reported improvements in Plaintiff's condition, he ignored other evidence indicating her condition worsened over time requiring specialized treatment in late 2018 and a new provider in 2019; and that even when Plaintiff reported improvement in symptoms, she also reported

5

other new, persistent, or worsening symptoms. (Pl. Br. 11-12). She points out she testified to limitations greater than those assessed. Id. at 12. Plaintiff argues the daily activities cited by the ALJ do not demonstrate she is not disabled, and she also testified the activities cited are more limited than the ALJ found. Id. She argues the ALJ erred in relying on the state agency psychologists' opinions because the record demonstrates that her condition worsened after they reviewed the evidence, her pain increased, her medication was changed, and she sought specialized mental health treatment with a new provider, all of which was ignored, glossed over, or unexplained by the ALJ. Id. at 13-15. Plaintiff concludes by arguing,

> This court is not asked to reweigh the evidence, as Defendant will likely assert, but is instead asked to review the record as a whole to determine if the record compels a different RFC conclusion. The ALJ's failure to acknowledge [Plaintiff]'s ongoing and worsening symptoms despite participating in more intense treatment throughout the relevant period tainted his view of the record as a whole and rendered the mental RFC unsupported by substantial evidence; therefore, remand is required.

Id. at 15.

The Commissioner responds that the ALJ's factual findings are supported by much more than minimal substantial evidence. (Comm'r Br. 7). She points to evidence which in her view supports the ALJ's factual findings. Id. at 7-9. She argues the evidence does not demonstrate worsening in Plaintiff's condition or that the ALJ ignored or glossed over the evidence supporting Plaintiff's allegations of disability. Id. 9-12.

### A. The ALJ's Relevant Findings

In his step three evaluation the ALJ found Plaintiff is moderately limited in each of the four broad areas of mental functioning—understanding, remembering, or applying

6

information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself—the "paragraph B" criteria. (R. 16-17). In his discussion of each area the ALJ summarized Plaintiff's allegation of limitations in that area and stated his reasons for concluding Plaintiff was "no more than" moderately limited in that area. Id. He also explained his determination that the "paragraph C" criteria are not satisfied. Id. at 17-18.

The ALJ assessed Plaintiff's RFC, and as it relates to mental impairments found Plaintiff can perform "jobs which are simple and routine, generally described as unskilled. [And she] should have no interaction with the public and occasional interaction with coworkers and supervisors." Id. at 18. As part of his RFC assessment, the ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. at 19. The ALJ explained his assessment as it relates to Plaintiff's mental functioning:

> The record also indicates that the claimant has a history of Depression, Anxiety, and Posttraumatic Stress Disorder. However, there is no history of any psychiatric inpatient hospitalizations, but rather only of outpatient psychotherapy, cognitive behavioral therapy as of April of 2019, and medication management. (Exhibits B1F-B10F [(R. 398-529)]). Mental status examinations of record performed throughout the entire relevant time period by various medical providers of record noted that while the claimant had an occasionally depressed and/ or anxious mood or affect with some notations of poor concentration and lacking insight, she overall was noted to have good eye contact, a neat and clean appearance, normal expressive language, normal thought processes, no perceptual abnormalities, an alert and oriented sensorium, intact recent and remote memory, intact attention and concentration, intact cognition, (Exhibits B1A; B1F/ 9, 14; B3F/ 3-4; B4F/ 4; B7F/ 9, 12, 15, 17, 20, 24, 27, 34, 36, 38, 41; B9F/ 4; B10F/ 3-4, 6). Furthermore, during appointments in June and December of 2017, she

> denied experiencing … memory problems … . (Exhibit B1F/ 8,13 [(R. 405, 410)]).  In April of 2016, she reported that she was coping and did not feel that her medication needed adjustment. (See Exhibit B1A [(R. 96-116)]). In June of 2017, the claimant reported that her mood was "stable" and that she and her husband were planning their family vacation, that she was busy with her daughter's activities, that she was selling "Paparazzi jewelry a couple weeks ago and is really enjoying it," and that she was sleeping well and overall doing well. (Exhibit B1F/ 12 [(R. 409)]).  She reported during an appointment in January 2019 appointment [sic] that "she thinks the Abilify is working well." (Exhibit B7F/ 15 [(R. 468)]).  In June of 2019, she reported that she had improvement with Effexor and that "she hasn't had any depression symptoms."  (Exhibit B10F/ 3 [(R. 517)]).  She further reported that she was sleeping eight hours and "that it's good quality sleep and she's grateful for it."  (Exhibit B10F/ 3 [Id.)]). There is simply no support from the record by way of objective medical evidence to support any greater limitations than those included in the residual functional capacity.
>
> In addition to the diagnostic and clinical findings discussed above, the claimant's statements and activities do not support greater limitations than those provided in the residual functional capacity.  … She testified that some of her mental health medications and cognitive therapy have been helpful for her mental health impairments and symptoms. (Hearing Testimony).  She reported in her Function Report that her impairments have not affected her ability to follow instructions or get along with authority figures for the most part, and also that she can lift up to ten pounds. (Exhibit B5E/ 2, 8 [(R. 324, 330)]).  In terms of activities of daily living, the claimant testified that she drives, folds laundry, goes to the store with her husband, cleans the house, takes out the trash, prepares simple meals, goes to church regularly, socializes with her "church friends," attends her daughter's school events along with her dance team performances and games, takes care of her emotional support dog that she has had since 2015, plays on the floor with her granddaughter when she visits, manages her finances, uses an iPad, spends time with her family, (Exhibits B5E; B7F/ 15 [(R. 323-35, 468)]; Hearing Testimony).  While the undersigned acknowledges that the claimant has some limitations performing some of these activities, and while none of these activities are alone dispositive, taken together and considered in conjunction with the above medical evidence of record, they suggest that the claimant can perform work within the above parameters on a sustained and continuous basis.

R. 20-21.

The ALJ evaluated the medical opinion of Dr. Schwartz, who had Performed a consultative examination of Plaintiff at the request of the state Disability Determination Service and prepared a report of that examination. (R. 429-36). The ALJ stated he found Dr. Schwartz's opinion was not persuasive because he supported it with Plaintiff's subjective complaints not objective findings, because his mental status examination and the others in the record are "overall within normal limits," and because the opinion

> is not consistent with or supported by the claimant's statements that she can get along with authority figures, that she engages in activities such as shopping in stores, attending church regularly, socializing with her "church friends" and family, going to her daughter's school events along with her dance team performances and games, performing household chores, managing finances, reading, and using an iPad.

(R. 23).

The ALJ also considered the prior administrative medical findings of fact made by the state agency psychological consultants and found the medical opinions stated therein are persuasive. He explained his rationale for finding them persuasive:

> because they are consistent with and supported by the previously discussed evidence of record, including the mental status examination findings, which remained overall within normal limits both before and after this opinion was rendered, in conjunction with the claimant's statements of improvement that she made to her providers of record and her statements regarding the activities she performs despite the alleged limitations.

Id. The ALJ recognized that the Central Kansas Mental Health Center treatment records contained notations that Plaintiff is unable to work. Id. He stated that to the extent these notations represent opinions,

> they are not persuasive as this is an issue that is reserved for the Commissioner, and these statements are not supported by or consistent with the overall normal mental status examinations of record and are not

9

> consistent with or supported by the claimant's statements that she can get along with authority figures, that she engages in activities such as shopping in stores, attending church regularly, socializing with her "church friends" and family, going to her daughter's school events along with her dance team performances and games, performing household chores, managing finances, reading, and using an iPad.

(R. 24).

### B.   Analysis

Plaintiff's argument rests mainly on her assertion that the records admitted into evidence after the state agency consultants' review show a worsening condition which led to specialized mental health treatment and to medication changes, thereby precluding the ALJ's reliance on the persuasiveness of their opinions.  The problem with this argument is that the record does not demonstrate, much less compel, a finding that Plaintiff's condition worsened, that a worsening condition required more specialized mental health treatment, or that the medication changes reflected in the record were caused by a worsening of her condition.

> Plaintiff claims her condition worsening over time is
>
> shown by the need for consistent medication changes (Tr. at 520, 518, 471), abnormal examination findings (Tr. at 494-495, 518, 520, 524), reports of worsening symptoms (Tr. at 470, 468, 524, 519), and the need for specialized mental health treatment when treatment with medications only was insufficient (Tr. at 493, 524).

(Pl. Br. 10).

However, the record evidence cited does not stand for the proposition suggested. During treatment at Salina Family Healthcare Center on December 12, 2018 Plaintiff did state "her fibromyalgia and depression are getting worse" (R. 470) and her provider

changed her medication.  Id. 471.  This may be seen to suggest the medication was changed because her condition had gotten worse, but that conclusion is not required, and the provider did not state the reason for the change.  Moreover, when her psychiatrist changed her medication on May 31, 2019, it was specifically noted that the reason was because the medication had "been progressively less effective," or "ineffective."  (R. 520).  On June 26, 2019, the psychiatrist noted, "Will increase Effexor for any anxiety symptoms but if this doesn't improve will likely need to switch again."  (R. 518).  The medication changes cited do not demonstrate a worsening condition, but as is common with psychiatric medication, waning effectiveness or trying different medications to produce a better response.  The reports of worsening symptoms are to the same effect.  Each of the instances cited is Plaintiff's report to the provider that her symptoms have been worse, in context suggesting there is episodic worsening, and in one instance it is recorded that Plaintiff "thinks it is due to all the recent weather changes and the fact she ran out of her Celebrex."  (R. 468).  In no case did the provider state that Plaintiff's condition was worsening.

Plaintiff's claim of "the need for specialized mental health treatment when treatment with medications only was insufficient" fares no better.  The evidence cited appears to show Plaintiff seeking new mental health treatment, but no where does it suggest that the treatment was prescribed because of a worsening mental condition.  Even assuming that treatment with medications alone was insufficient, Plaintiff does not show that this condition suddenly changed because of a worsening of her impairments.  Moreover, in the November 9, 2018 treatment note it is recorded that Plaintiff "reported

11

that previous therapist would not return her calls so she has selected to engage in behavioral health services at clinic [sic]."

Finally, the court addresses Plaintiff's citation of abnormal examination findings. As quoted supra at 7, the ALJ explained his evaluation of the mental status examination findings:

> Mental status examinations of record performed throughout the entire relevant time period by various medical providers of record noted that while the claimant had an occasionally depressed and/ or anxious mood or affect with some notations of poor concentration and lacking insight, she overall was noted to have good eye contact, a neat and clean appearance, normal expressive language, normal thought processes, no perceptual abnormalities, an alert and oriented sensorium, intact recent and remote memory, intact attention and concentration, intact cognition, (Exhibits B1A; B1F/ 9, 14; B3F/ 3-4; B4F/ 4; B7F/ 9, 12, 15, 17, 20, 24, 27, 34, 36, 38, 41; B9F/ 4; B10F/ 3-4, 6).

(R. 20-21). The court's review of the evidence reveals the ALJ's finding is a fair assessment of the record mental status examinations. Plaintiff's argument that the ALJ's finding ignores or glosses over pertinent medical records contradicting his conclusion is not an accurate portrayal. The ALJ's finding recognizes that all the examinations, and particularly certain findings in some examinations, can be interpreted differently. But it is the ALJ's duty to evaluate the conflicting evidence, he has done so in this instance, he explained his evaluation, and the record supports his evaluation. Further, three of the four treatment notes cited by Plaintiff are also cited by the ALJ. (R. 494-95, 518, 520; Ex. B7F/ 41-42, B10F/ 4, 6). The fourth (R. 524, B10F/ 10) was not cited by the ALJ, but also fits comfortably within his evaluation. The fact that some of the mental status examinations cited by the ALJ were made during treatment visits for physical ailments, is

of no import because healthcare providers are qualified to, and do, evaluate both physical and mental aspects of their patients' health. While an argument might be made with some validity that a psychologist or other mental healthcare provider is not qualified to address his patients' physical health, the reverse is not true, and in any case such an argument goes to the weight, not the admissibility, of the evidence. Plaintiff has shown no evidence which compels finding a material worsening of her condition after the state agency psychologists reviewed the record.

Because Plaintiff has shown no worsening of her condition after the state agency psychologists reviewed the evidence, she has shown no error in the ALJ's reliance on their opinions which he found to be persuasive. Plaintiff's remaining arguments relate to her view of the evidence and essentially constitute a request that the court reweigh the evidence and substitute its judgment for that of the Commissioner. As noted above, it may not do so. Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172; Bowling, 36 F.3d at 434.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated December 20, 2021, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**